# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| **TEREX SOUTH DAKOTA, INC.**<br>**TEREX USA, LLC** | **Case No. 4:21-cv-00287** |
| Plaintiffs, | |
| **v.** | **JURY DEMAND** |
| **SINOBOOM NORTH AMERICA**<br>**LLC,** | |
| Defendant. | |

## PLAINTIFFS TEREX SOUTH DAKOTA, INC. AND TEREX USA, LLC'S BRIEF IN SUPPORT OF ITS APPLICATION FOR PRELIMINARY INJUNCTION

# **TABLE OF CONTENTS**

I.  NATURE AND STAGE OF THE PROCEEDING ........................................1

II.  SUMMARY OF THE ARGUMENT ................................................1

III.  FACTUAL BACKGROUND....................................................5

    A.  Plaintiff's GENIE BLUE Trademark....................................5

    B.  Defendants and Their Wrongful Copying...............................7

IV.  ARGUMENT................................................................11

    A.  Plaintiff is Highly Likely to Succeed on the Merits of its
        Trademark Infringement and Unfair Competition Claims................12

        1.  Plaintiff has Protectable Rights in its GENIE BLUE
            Trademark ...................................................... 12

        2.  There is a Substantial Likelihood of Confusion Between
            the Plaintiff's GENIE BLUE Trademarks and the
            Defendant's Infringing Use...................................... 14

            a.  Factor 1: GENIE BLUE Trademark Is Strong .............. 14

            b.  Factor 2: Plaintiff's Trademark and Defendant's
                Replica are, if Not the Same, Substantially Similar ...... 17

            c.  Factor 3: Parties Sell the Same Products...................... 18

            d.  Factor 4: The Purchasers and Retail Channels are
                Substantially Identical ..................................... 19

            e.  Factor 5: The Marketing Efforts are Substantially
                Identical ......................................................... 20

            f.  Factor 6: Sinoboom's Intent to Confuse Strongly
                Favors Confusion.......................................... 20

            g.  Factor 7: Actual Confusion is Inevitable...................... 22

h.    Factor 8: Customers and Users Are Not
Necessarily Involved In The Sale Further Favoring
Confusion ................................................................... 23

B.    If Not Enjoined, Plaintiff Will be Irreparably Harmed by
Sinoboom's Conduct ............................................................24

C.    The Balance of Hardship Weighs Heavily in Favor of the
Plaintiff ................................................................................26

D.    A Preliminary Injunction Will Not Disserve the Public Interest ........27

V.    CONCLUSION ................................................................................28

# TABLE OF AUTHORITIES

## Cases

*Abraham v. Alpha Chi Omega*,
   781 F.Supp.2d 396 (N.D. Tex. 2011) ..................................................... 19, 25

*Am. Rice, Inc. v. Producers Rice Mill, Inc.*,
   518 F.3d 321 (5th Cir. 2008) .......................................................... 14, 20, 22

*Amid, Inc. v. Medic Alert Found. U.S., Inc.*,
   241 F.Supp.3d 788 (S.D. Tex. 2017)...........................................................13

*Bd. of Regents of the Univ. of Houston Sys. v. Houston Coll. of Law, Inc.*,
   214 F.Supp.3d 573 (S.D. Tex. 2016)...........................................................15

*Blue Bell Creameries, L.P. v. Denali Co., LLC*,
   2008 U.S. Dist. LEXIS 58083, at *21 (S.D. Tex. July 31, 2008) ................27

*Boston Professional Hockey Ass'n v. Dallas Cap & Emblem Mfg., Inc.*,
   510 F.2d 1004 (5th Cir. 1975) ............................................................. 11, 23

*Byrum v. Landreth*,
   566 F.3d 442 (5th Cir. 2009) .........................................................................3

*Chevron Chem. Co. v. Voluntary Purchasing Groups, Inc.*,
   659 F.2d 695  (5th Cir. 1981) ......................................................................21

*Clearline Techs., Ltd. v. Cooper B-Line, Inc.*,
   948 F.Supp.2d 691 (S.D. Tex. 2013)...................................................... 3, 25

*Daniels Health Scis., v. Vascular Health Scis., LLC*,
   710 F.3d 579 (5th Cir. 2013) .................................................................. 3, 11

*DAP Prods., Inc. v. Color Tile Mfg., Inc.*,
   821 F.Supp. 488 (S.D. Ohio 1993)..............................................................13

*Elvis Presley Enters. v. Capece*,
   141 F.3d 188 (5th Cir. 1998) ................................................... 18, 19, 23, 24

*Exxon Corp. v. Tex. Motor Exchange of Houston, Inc.*,
    628 F.2d 500 (5th Cir. 1980) .................................................................. 17, 18

*Federal Sav. & Loan Ins. Corp. v. Dixon*,
    835 F.2d 554 (5th Cir. 1987) ......................................................................11

*Ferrari S.P.A. v. Roberts*,
    944 F.2d 1235  (6th Cir. 1991) ...................................................................13

*Fletcher's Original State Fair Corny Dogs, LLC v. Fletcher-Warner Holdings LLC*,
    2020 U.S. Dist. LEXIS 28613, at *40 (E.D. Tex. Jan. 17, 2020) .......... 25, 26

*Global Healing Ctr. LP v. Nutritional Brands Inc.*,
    2014 U.S. Dist. LEXIS 28686, at *33 (S.D. Tex. Mar. 6, 2014) ........... 11, 14

*Gruma Corp. v. Mexican Rests., Inc.*,
    497 Fed. Appx. 392 (5th Cir. 2012) ...........................................................15

*Heartsprings, Inc. v. Heartspring, Inc.*,
    143 F.3d 550 (10th Cir.), *cert. denied*, 525 U.S. 964 (1998) ......................20

*Homax Prod., Inc. v. Homax, Inc.*,
    2009 U.S. Dist. LEXIS 126699, at *17 (S.D. Tex. Aug. 5, 2009) ......... 15, 23

*Joy Mfg. Co. v. CGM Valve & Gauge Co.*,
    730 F.Supp. 1387 (S.D. Tex. 1989)............................................................23

*Lois Sportswear, USA v. Levi Strauss & Co.*,
    799 F.2d 867 (2d Cir. 1986) ......................................................................23

*Paulsson Geophysical Servs., Inc. v. Sigmar*,
    529 F.3d 303 (5th Cir. 2008) ............................................................ 3, 12, 25

*Quantum Fitness Corp. v. Quantum Lifestyle Ctrs. L.L.C.*,
    83 F.Supp.2d 810 (S.D. Tex. 1999)................................. 4, 14, 16, 20, 24, 27

*Roto-Rooter Corp. v. O'Neal*,
    513 F.2d 44 (5th Cir. 1975) .......................................................................22

*S&R Corp. v. Jiffy Lube Intern., Inc.*
   968 F.2d 371 (3d Cir. 1992) ............................................................27

*Scott Fetzer Co. v. House of Vacuums, Inc.*,
   381 F.3d 477 (5th Cir. 2004) .......................................................20

*Soweco, Inc. v. Shell Oil Co.*,
   617 F.2d 1178 (5th Cir. 1980) ....................................................14

*TGI Friday's, Inc v. Great Northwest Rests., Inc.*,
   652 F.Supp.2d 763 (N.D. Tex. 2009) ..................................... 24, 27

*T-Mobile US, Inc. v. Aio Wireless LLC*,
   991 F.Supp.2d 888 (S.D. Tex. 2014).............................. 17, 19, 20

*Union Nat'l Bank of Laredo, Tex. v. Union Nat'l Bank of Tex.*,
   909 F.2d 839 (5th Cir. 1990) .....................................................12

*University of Texas v. Camenisch*,
   451 U.S. 390 (1981).....................................................................11

*Viacom Int'l, Inc. v. IJR Capital Invs., L.L.C.*,
   891 F.3d 178 (5th Cir. 2018) .......................................................16

## Statutes

15 U.S.C. § 1051 ...............................................................................11
15 U.S.C. § 1057(b) .........................................................................12
15 U.S.C. § 1114 ...............................................................................11
15 U.S.C. § 1115 ...............................................................................12
15 U.S.C. § 1116 ...............................................................................11
15 U.S.C. § 1125.......................................................................... 11, 12

# I.   NATURE AND STAGE OF THE PROCEEDING

Terex South Dakota, Inc. and Terex USA, LLC (collectively "Terex" or "Plaintiff") initiated this lawsuit on January 28, 2021. Plaintiff asserts, among other things, claims for federal trademark infringement and false designation of origin.  As this infringement will cause irreparable harm to Terex's brand and reputation, Plaintiff now files this application for preliminary injunction. Plaintiff is undertaking efforts to formally serve the Complaint and Summons on Defendants, along with this application.

# II.   SUMMARY OF THE ARGUMENT

Plaintiff Terex is a leading manufacturer of elevating work platforms and lift equipment, including scissor lifts, boom lifts, and vertical lifts and has sold such products under the Genie® brand since 1966.  Plaintiff's products are easily identified in the marketplace by Plaintiff's distinctive blue color—a color used in the industry exclusively by Genie ("GENIE BLUE"). As a result of, among other things, decades of substantial advertising, promotion, and sale of products bearing the GENIE BLUE Trademark over the last four decades, purchasers and end users understand GENIE BLUE to be a source identifier of Plaintiff and associate GENIE BLUE with Plaintiff.

Given its long, continuous, and exclusive use of GENIE BLUE in association with its products, Plaintiff has acquired strong, valid, and enforceable trademark

rights in its GENIE BLUE marks. Additionally, plaintiff holds several federal trademark registrations, including U.S. Registration No. 3540392 for the Genie Blue color for "*mobile elevating work platforms*," and U.S. Registration Nos. 5965074, 5970650, and 5970650 for the GENIE BLUE color for "*aerial and elevated work platforms, scissor lifts*" where the base and platform basket of an elevating work platform are shown in GENIE BLUE.

Plaintiff acquired such rights well before the Defendant's infringing, unlawful, and actionable acts. In particular, only days ago, Sinoboom, a Chinese manufacturer of mobile elevating work platforms and lifts, announced a change to its current products that use a red color scheme.  Specifically, Sinoboom North America, LLC ("Sinoboom" or "Defendant") announced that it was implementing a new "blue color scheme" on its elevating working platforms in the United States. This drastic change in color, is a clear attempt to trade off of Plaintiff's extensive goodwill and reputation developed in its registered GENIE BLUE Trademark in the U.S. market.

To prevail on this request for injunctive relief, Plaintiff will demonstrate that: (1) a substantial likelihood of success in proving trademark infringement exists; (2) a substantial threat of continuing irreparable injury will exist if the injunction is not issued; (3) the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted; and (4) the grant of an injunction will not

disserve the public interest. *Daniels Health Scis., v. Vascular Health Scis., LLC*, 710 F.3d, 579, 582 (5th Cir. 2013) (citing *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009)). To show a substantial likelihood of success, Plaintiff will establish that: (1) it has a registered and protectable trademark, and (2) Defendant's use of a similar mark creates a likelihood of confusion. *Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 309 (5th Cir. 2008).

Here, through its extensive, continuous, and exclusive use, Plaintiff has acquired protectable rights in its GENIE BLUE trademark as evidenced by several registrations on the Principal Register of the United States Patent and Trademark Office.  Given the exclusivity of use and ownership of the GENIE BLUE trademark by the Plaintiff, Defendant's use of the same or substantially the same color on the exact same type of products is likely, if not guaranteed, to cause confusion. Additionally, absent an injunction, a substantial threat of continuing irreparable injury will exist because Terex and Sinoboom are direct competitors with irreversible consequences of lost goodwill and consumer confusion. *See Clearline Techs., Ltd. v. Cooper B-Line, Inc.*, 948 F.Supp.2d 691, 715 (S.D. Tex. 2013) ("[w]here the infringement involves direct competitors, a finding of irreparable harm may well be appropriate").

Over the course of four decades of exclusive use, Plaintiff has expended substantial resources advertising and promoting its products and services to the

3

public and as a result has acquired substantial goodwill in GENIE BLUE. Allowing Sinoboom to continue to use Plaintiff's duly registered and valuable mark will substantially harm the Plaintiff as consumer confusion and loss of exclusivity of use will inevitably follow. This injury to Plaintiff substantially outweighs any alleged injury that the Defendant may face. For many years, Defendant has used its own red color scheme to advertise and promote its products. Sinoboom only announced that it was now implementing its infringing "blue color scheme" on January 19, 2021. Based on Plaintiff's quick action, Sinoboom would face no hardship when enjoined from using Plaintiff's GENIE BLUE trademark.  Moreover, Defendant has no vested interest in this infringing color scheme aside from trading off of Plaintiff's reputation and goodwill in the United States. Finally, a grant of an injunction will in no way disserve the public interest; but would serve the public interest. The public has a substantial interest in not being confused and its interest is "always served by requiring compliance with Congressional statutes such as the Lanham Act and by enjoining the use of infringing marks." *Quantum Fitness Corp. v. Quantum Lifestyle Ctrs. L.L.C.*, 83 F.Supp.2d 810, 832 (S.D. Tex. 1999) (citations omitted). "Protecting [Terex's] valid trademark from infringement by a junior user does not disserve the public interest." *Id.*

## III.   FACTUAL BACKGROUND

## A.   Plaintiff's GENIE BLUE Trademark

Plaintiff is and has been a leading global designer and manufacturer of lift equipment since 1966. (Ex. 1, Meyers Decl. at ¶ 3.)  Plaintiff's product portfolio includes a variety of elevated work platforms and lift equipment including telescopic and articulated booms, scissor lifts, and vertical mast lifts. Plaintiff's products have long been recognized for their high quality, dependability, and safety among purchasers and end users; accordingly, demand for Plaintiff's products is high. Since the 1980s, Plaintiff has continuously and exclusively used a distinctive blue color, GENIE BLUE, in commerce throughout the United States to identify its lift equipment and distinguish it from other companies. (Ex. 1, Meyers Decl. at ¶ 3.) Representative images of Genie lifts bearing the GENIE BLUE trademark are set forth below:

  

The GENIE BLUE color is a well-known, well-recognized, and dominant source identifier that has obtained substantial goodwill with consumers and the public. (Ex. 1, Meyers Decl. at ¶ 4.)  Indeed, Plaintiff specifically advertises GENIE BLUE as its distinguishing mark.  (*Id*. at ¶ 7.) As an example, the following advertising displays the GENIE BLUE as the "Color of Confidence" and encourages its customers to "Think Blue":



As a result of, among other things, decades of substantial advertising, promotion, and sale of products bearing the GENIE BLUE trademarks, purchasers and end users understand Plaintiff's trademarks to be a source identifier of Plaintiff and associate Plaintiff's trademarks with Plaintiff.  (Ex. 1, Meyers Decl. at ¶ 9.) Plaintiff has acquired strong, valid, and enforceable common law trademark rights

in GENIE BLUE trademark for lift equipment. Additionally, plaintiff holds several federal trademark registrations, including U.S. Registration No. 3540392 for the Genie Blue color for "*mobile elevating work platforms*," which has been duly registered on the Principle Register of the U.S. Patent and Trademark Office since June 29, 2006 and achieved an incontestability status.   (Ex. 2, Certificate of Registration.) Plaintiff also holds U.S. Registration Nos. 5965074, 5970650, and 5970651 for the GENIE BLUE color for "*aerial and elevated work platforms, scissor lifts*" where the base and platform basket of an elevating work platform are shown in GENIE BLUE, which have been duly registered on the Principle Register of the United States Patent and Trademark Office since January 2020.  (Exs. 3-5.) The GENIE BLUE Registrations are *prima facie* evidence of the validity of the GENIE BLUE trademark. Plaintiff is the sole owner of all right, title, and interest in and to the GENIE BLUE trademark, which are each assets of substantial value to Plaintiff and enjoy worldwide recognition.

## B.   Defendants and Their Wrongful Copying

Sinoboom is a Chinese Manufacturer of mobile elevating work platforms and aerial lifts, which was founded in 2008. (Ex. 1, Meyers Decl. at ¶ 11.)  Since it was founded, Sinoboom has sold its products using a red color scheme. (*Id*. at ¶ 12.) An example of Sinoboom's product using its red color scheme is shown below:



In July 2020, Sinoboom China opened a North American subsidiary—Sinoboom North America. (Ex. 1, Meyers Decl. at ¶ 11.)  On January 19, 2021, Sinoboom North America announced that it was implementing a new "blue color scheme" on its elevated working platforms in the United States.  (Ex. 1 at Ex. C.) The announcement stated that Sinoboom intends to "make a full product line-up color change" set to appear on at least "Sinoboom scissor lifts as early as January 2021 in North America." (*Id.*)  The change from red to blue is presented below based on an image at www.sinoboom.us:



*Terms subject to credit approval and may change

Sinoboom's recent and sudden adoption and use of Plaintiff's GENIE BLUE trademark—as soon as it entered the U.S. market—is designed to mislead the consuming public, unfairly compete with Plaintiff, and pass off Sinoboom's products as associated with and/or originating from the Plaintiff. An exemplary, side by side comparison of a Plaintiff's product and a Defendant's infringing product (Ex. 6) shows the substantial similarity and confusion that is likely, if not certain, to ensue:

 

As shown in the above exemplary sample, Sinoboom is brazenly copying the Plaintiff's trademark by coloring both the base and the platform basket of an elevating work platform GENIE BLUE—a duly registered mark on the Principle Register of the United States Patent and Trademark Office. Indeed, given that registration on the Principle Register is *prima facie* evidence of validity and constitutes constructive notice of the registration (not to mention the actual notice provided by Plaintiff), Sinoboom's use of the Plaintiff's trademarks, with constructive and/or actual notice, clearly shows the willful intent of Sinoboom to misrepresent the source of Sinoboom's goods so as to cause confusion, mistake, and deception as to Sinoboom's connection or association with Plaintiff and Plaintiff's trademark.

## IV.   ARGUMENT

Plaintiff seeks redress under the Lanham Act, 15 U.S.C. § 1051, *et seq*., and Texas State law.[1] Once a violation of the Lanham Act is demonstrated, injunctive relief will readily issue pursuant to Section 34 thereof, 15 U.S.C. § 1116. *See, e.g., Boston Professional Hockey Ass'n v. Dallas Cap & Emblem Mfg., Inc.*, 510 F.2d 1004, 1013 (5th Cir. 1975), *cert. denied*, 423 U.S. 868 (1975); *Global Healing Ctr. LP v. Nutritional Brands Inc.*, No. 4:14-CV-269, 2014 U.S. Dist. LEXIS 28686, at *33 (S.D. Tex. Mar. 6, 2014). To prevail on this request for injunctive relief, Plaintiff will demonstrate that: (1) a substantial likelihood of success in proving trademark infringement exists; (2) a substantial threat of continuing irreparable injury will exist if the injunction is not issued; (3) the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted; and (4) the grant of an injunction will not disserve the public interest. *Daniels Health Scis.* LLC, 710 F.3d at 582. Nevertheless, Plaintiff "is not required to prove his case in full at a preliminary injunction hearing." *Federal Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 558 (5th Cir. 1987)(quoting *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)).

---

[1] Plaintiff asserts a cause of action for infringement of its registered trademark pursuant to 15 U.S.C. § 1114 and of its unregistered trademarks and trade dress pursuant to 15 U.S.C. § 1125(a).

## A.   Plaintiff is Highly Likely to Succeed on the Merits of its Trademark Infringement and Unfair Competition Claims

Lanham Act liability is established by showing that the defendant "uses in commerce any word, term, name, symbol, or device" that is "likely to cause confusion, or to cause mistake" about the "origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." *Paulsson Geophysical Servs., Inc.,* 529 F.3d at 309 (quoting 15 U.S.C. § 1125(a)(1)(A)). The Court first considers whether the plaintiff has a "protectable right in the mark" and second whether there is a "likelihood of confusion between the marks." *Id.* Ownership is determined by priority of use. *Union Nat'l Bank of Laredo, Tex. v. Union Nat'l Bank of Tex.*, 909 F.2d 839, 842-43 (5th Cir. 1990) ("The first one to use the mark is generally held to be the 'senior' user and is entitled to enjoin other 'junior' users from using the mark, or one that is deceptively similar to it[.]").  Here, there is no question that Plaintiff owns a valid and protectable mark.

### 1.   Plaintiff has Protectable Rights in its GENIE BLUE Trademark

A registered trademark is presumed valid. 15 U.S.C. §§ 1057(b) and 1115(a). Registration is "prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce . . ." *Id.*

Accordingly, Plaintiff's certificates of registration (Exs. 2-5) for its GENIE BLUE trademark are at least *prima facie* evidence of its ownership of valid protectable marks.[2]

U.S. Registration No.5,970,650, owned by Plaintiff, explains clearly: "The color(s) blue is/are claimed as a feature of the mark." (Ex. 4.) The '650 Registration states that it covers: "the color blue as applied to the base and platform basket of an elevating work platform." (*Id.*)  The Registration covers "aerial and elevating work platforms, scissor lifts" in class 7.  (*Id.*)

Similarly, U.S. Registration No. 3,540,392, also owned by Plaintiff, explains clearly: "The color(s) Blue is/are claimed as a feature of the mark." (Ex. 2.) The '392 Registration identifies "mobile elevating work platform" in class 7.  (*Id.*) Moreover, the '392 Registration is incontestable.   "An 'incontestable' mark cannot be challenged as lacking secondary meaning; such marks are conclusively presumed to

---

[2] In addition to the evidence provided by the numerous registrations, Plaintiff submitted evidence of long-standing and exclusive use of the color blue in the relevant market, evidence of extensive sales and advertising including advertising specifically directly related to looking for GENIE BLUE, which is compelling evidence of distinctiveness, *i.e.*, secondary meaning, in the marketplace. (Ex. 1, Meyers Decl. at ¶¶ 5-9.)  In addition to such evidence, Plaintiff also submits that Sinoboom's copying of GENIE BLUE when it previously used a red color scheme is "strong" evidence of secondary meaning because "there is no logical reason" for Sinoboom's copying except to "attempt to realize upon a secondary meaning in existence." *Amid, Inc. v. Medic Alert Found. U.S., Inc.*, 241 F.Supp.3d 788, 818 (S.D. Tex. 2017) (quoting *Ferrari S.P.A. v. Roberts*, 944 F.2d 1235, 1239 (6th Cir. 1991); *DAP Prods., Inc. v. Color Tile Mfg., Inc.*, 821 F.Supp. 488, 492 (S.D. Ohio 1993) (Secondary meaning can be presumed where a court can infer that the defendant intentionally copied plaintiff's color scheme.).

be nondescriptive or to have acquired secondary meaning." *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1184-85 (5th Cir. 1980) (citation omitted).

### 2. There is a Substantial Likelihood of Confusion Between the Plaintiff's GENIE BLUE Trademarks and the Defendant's Infringing Use

In the Fifth Circuit, Courts look at the following non-exhaustive list of so-called "digits of confusion," to assess the likelihood of confusion: "(1) strength of the plaintiff's mark; (2) similarity of design between the marks; (3) similarity of the products; (4) identity of retail outlets and purchasers; (5) similarity of advertising media used; (6) the defendant's intent; (7) actual confusion; and (8) degree of care exercised by potential purchasers." *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008).

### a. <u>Factor 1</u>: GENIE BLUE Trademark Is Strong

Simply, stronger marks deserve greater protection because there is an increased likelihood that consumers will confuse the junior user's mark with that of the senior user." *Global Healing Ctr. LP*, 2014 U.S. Dist. LEXIS 28686, at *14 (citation omitted). The strength of a trademark in the marketplace is measured by its effectiveness in identifying a source of goods." *Quantum Fitness Corp.,* 83 F.Supp.2d at 818-19.

Plaintiff's GENIE BLUE trademark enjoys extensive commercial strength. First, Plaintiff has continuously and exclusively used its distinctive GENIE BLUE

trademark in connection with the sale of its lift products throughout the United States *for well over thirty (30) years*. (Ex. 1, Meyers Decl. at ¶ 3.)  *See Gruma Corp. v. Mexican Rests., Inc.*, 497 Fed. Appx. 392, 396 (5th Cir. 2012)(finding substantial exclusive use of the mark to weight in favor of the mark owner).

Second, the GENIE BLUE trademark has been subject to tens of millions of dollars' worth of advertising by Plaintiff, including advertising focused on conveying that GENIE BLUE is a valuable trademark.  (Ex. 1, Myers Decl. at ¶¶ 7-9: Advertising highlighting "THE COLOR OF CONFIDENCE" and to "THINK BLUE.") Such advertisement campaigns contributed to Plaintiff's products' widespread public recognition and generated substantial goodwill. *Homax Prod., Inc. v. Homax, Inc.*, No. H-08-cv-01560, 2009 U.S. Dist. LEXIS 126699, at *17 (S.D. Tex. Aug. 5, 2009) ("Marks may be strengthened [in the marketplace] by extensive advertising, length of time in business, public recognition, and uniqueness.") (modification in original) (citation omitted).  Indeed, in this Circuit, courts routinely find marks that are subject to extensive advertising and have been in exclusive use by a mark owner for long periods of time are strong and entitled to greater protection. *See e.g., Bd. of Regents of the Univ. of Houston Sys. v. Houston Coll. of Law, Inc.*, 4:16-CV-1839, 214 F.Supp.3d 573 (S.D. Tex. 2016); *Homax Prod., Inc.*, 2009 U.S. Dist. LEXIS 126699, at *17 (holding that evidence indicating advertising spending of several million dollars per year, use of the mark for 27 years,

and substantial market share and gross sales establishes "a relatively strong position in the marketplace," and rejecting defendant's argument that direct evidence (*e.g.*, consumer surveys) is required to indicate market strength); *Quantum Fitness Corp.*, 83 F.Supp.2d at 819 (holding that plaintiff had "established a relatively strong mark within the fitness industry" based on $1 million in advertising expenses over a roughly eight year period, distribution of 100,000 promotional brochures, and extensive and favorable reports in industry publications).

Third, numerous people in the industry have made declarations regarding the unparalleled strength of the GENIE BLUE trademark in the marketplace.  Exhibit 7 includes multiple declarations that include industry statements such as: "The color blue is immediately recognized in my mind with the 'Genie' line of aerial and elevating work platforms and scissor lifts;" "I and others refer to Genie equipment by the color blue and I am not aware of any other companies that manufacture or sell this equipment in the color blue;" "[Blue] uniquely sets its Brand from others," and "Customers, dealers, and manufacturers alike all associate the Genie Blue color with Genie [branded] lifts." *See Viacom Int'l, Inc. v. IJR Capital Invs., L.L.C.*, 891 F.3d 178, 190 (5th Cir. 2018) (stating that "direct consumer testimony" is one of the factors that courts in the Fifth Circuit consider to determine whether a mark has acquired secondary meaning).

Accordingly, in view of Plaintiff's decades-long and exclusive use, Plaintiff's substantial advertising of its products in connection with its GENIE BLUE trademark, incontestability of a federally registered mark, and substantial consumer testimony, Plaintiff's GENIE BLUE trademark is strong and subject to great protection. This factor heavily favors a finding of confusion.

### b.    <u>Factor 2</u>: Plaintiff's Trademark and Defendant's Replica are, if Not the Same, Substantially Similar

"The Fifth Circuit uses a 'subjective eyeball test' to determine whether two marks are similar." *T-Mobile US, Inc. v. Aio Wireless LLC,* 991 F.Supp.2d 888, 921 (S.D. Tex. 2014) (quoting *Exxon Corp. v. Tex. Motor Exchange of Houston, Inc.*, 628 F.2d 500, 504 (5th Cir. 1980)). In other words, "[t]he similarity of design is determined by considering the overall impression created by the mark as a whole rather than simply comparing individual features of the marks." *Exxon Corp.*, 628 F.2d at 504-05.

In this case, by using the "subjective eyeball test," it is readily evident that the Defendant's infringing use is—if not the same—substantially similar to the Plaintiff's registered trademark for the color blue. Indeed, the image below shows that the Defendant's infringing use of the Plaintiff's mark renders its products almost indistinguishable from Plaintiff's products.

  

U.S. Registration No. 5,970,650

In the example shown above, both the Plaintiff's scissor lift and the Defendant's infringing scissor lift use blue color for the base and the platform basket, and both use a gray color in connection with the extending ladder. This brazen copying of the Plaintiff's GENIE BLUE trademark, both objectively and subjectively, is likely to result in confusion. *Id.* at 505 ("Obviously, the greater the similarity in the design of the trademarks, the greater the likelihood of confusion."). This factor heavily favors Plaintiff.

### c.   <u>Factor 3</u>: Parties Sell the Same Products

"The greater the similarity between the products and services, the greater the likelihood of confusion." *Elvis Presley Enters. v. Capece*, 141 F.3d 188, 202 (5th Cir. 1998) (citing *Exxon Corp.*, 628 F.2d at 505). Here, both Plaintiff and Defendant promote, advertise, and sell the same products. More specifically, both parties sell "*mobile elevating work platforms*" and "*aerial and elevated work platforms, scissor lifts*" and also both more specifically sell telescopic boom lifts, articulating boom

lifts, scissor lifts, and vertical lifts. (Ex. 1, Meyers Decl. at ¶ 12.)  The Plaintiff and the Defendant are in direct competition with each other which exacerbate the likelihood of confusion. *Abraham v. Alpha Chi Omega*, 781 F.Supp.2d 396, 421 (N.D. Tex. 2011) (finding the identical nature of the products and direct competition between the parties to weigh heavily in favor of likelihood of confusion). This factor heavily favors Plaintiff and confirms the ultimate conclusion that confusion is likely. *Elvis Presley Enters.*, 141 F.3d at 201 (5th Cir. 1998) ("The relevant inquiry is whether, under the circumstances of the use, the marks are sufficiently similar that prospective purchasers are likely to believe that the two users are somehow associated.") (internal quotation mark and citation omitted).

### d. <u>Factor 4</u>: The Purchasers and Retail Channels are Substantially Identical

"Differences in the parties' customer bases can lessen the likelihood of confusion." *Bd. of Regents of the Univ. of Houston Sys.*, 214 F.Supp.3d at 589. Here, given that both parties sell the same products, there can be no dispute that the parties target the same segments of the market. (Ex. 1, Myers Decl. at ¶ 15.)  In fact, "[t]he group of consumers seeking to purchase" from Sinoboom "would overlap almost completely with the group of consumers seeking to purchase" from Terex; "this similarity would indicate confusion under the fourth digit." *T-Mobile US, Inc.*, 991 F.Supp.2d at 916 (finding the fourth digit of confusion "weighs heavily" in favor of

Plaintiff) (citing *Scott Fetzer Co. v. House of Vacuums, Inc.*, 381 F.3d 477, 485 (5th Cir. 2004)). This factor, too, heavily favors a finding of confusion.

### e. <u>Factor 5</u>: The Marketing Efforts are Substantially Identical

"Courts also consider is [sic] the similarity between parties' marketing efforts: 'the greater the degree of overlap in the marketing approaches of the two entities, the greater the likelihood of confusion." *Quantum Fitness Corp.,* 83 F.Supp.2d at 827 (quoting *Heartsprings, Inc. v. Heartspring, Inc.*, 143 F.3d 550, 555 (10th Cir.), *cert. denied*, 525 U.S. 964 (1998)). In this case, there can be no reasonable dispute that parties use similar marketing efforts. (Ex. 1, Myers Decl. at ¶ 15.) Both parties use press releases, catalogs, advertisements, online presence, and trade shows to promote their products. Because the advertising channels are essentially identical, this factor favors a finding of likelihood of confusion.  *See T-Mobile US, Inc.*, 991 F.Supp.2d at 921.

### f. <u>Factor 6</u>: Sinoboom's Intent to Confuse Strongly Favors Confusion

"Proof of the defendant's intent to benefit from the good reputation of the plaintiff's products is not required in order to establish infringement." *Am. Rice, Inc.*, 518 F.3d at 332.  Intent of defendants, however, "in adopting (their mark) is a critical factor, since if the mark was adopted with the intent of deriving benefit from the reputation of (the plaintiff,) ***that fact alone may be sufficient to justify the inference***

*that there is confusing similarity*." *Chevron Chem. Co. v. Voluntary Purchasing Groups, Inc.*, 659 F.2d 695, 703-04 (5th Cir. 1981) (emphasis and boldface added).

Here, Sinoboom's intent to confuse can be inferred from its conduct. Particularly, Sinoboom China has used a red color scheme to advertise and sell its products.   Indeed, Sinoboom North America (the Defendant) used the red color scheme in the United States.   Then, as it is expanding in the United States, Sinoboom has a change of heart and undergoes a full product line-up color change.  (Ex. 1 at Ex. C.)  A recent press article shows the 2021 change of plans in the United States to trade off-of the Plaintiff by the abrupt change from red to blue.  (Ex. 8.)



*SINOBOOM Intelligence North America Subsidiary Ships One After Another*

Sinoboom cannot claim ignorance. Sinoboom certainly knows about the valuable GENIE BLUE trademark.[3] With this knowledge, Sinoboom intentionally copied the registered color blue. (Ex. 1, Myers Decl. at ¶ 17.) There can be only one reason for this conduct: to trade off the extensive goodwill and reputation that GENIE BLUE has developed in the U.S. market over the last three decades. This fact alone is sufficient to justify a likelihood of confusion, *Am. Rice, Inc.*, 518 F.3d at 332, but certainly, this factor favors a finding of a likelihood of confusion.

### g.   Factor 7: Actual Confusion is Inevitable

Given the very recent entry of Sinoboom to the U.S. market using the Plaintiff's GENIE BLUE trademark, the early stage of proceedings, and absent discovery, Plaintiff is not in a position to offer substantial proof of actual confusion. Proof of actual confusion, however, is not necessary. *Roto-Rooter Corp. v. O'Neal*, 513 F.2d 44, 45 (5th Cir. 1975) ("Proof of actual confusion is not necessary—likelihood of confusion is the appropriate inquiry.") (citations omitted). Here, as established by the remaining likelihood of confusion factors, Sinoboom's use of the Plaintiff's GENIE BLUE trademark is highly likely to result in confusion. Since, likelihood of confusion is the appropriate inquiry, and proof of actual confusion is not necessary, this factor, too, favors the Plaintiff. *Id.* At the very least this factor is

---

[3] Sinoboom's recently appointed North American director of sales, Paul Waller, was previously employed by Terex in a sales and marketing capacity for the Genie line of products. (Ex. 9.)

neutral. *Elvis Presley Enters.*, 141 F.3d at 194 ("No one factor is dispositive, and a finding of a likelihood of confusion does not even require a positive finding on any these 'digits of confusion.'").

> **h.** **Factor 8**: **Customers and Users Are Not Necessarily Involved In The Sale Further Favoring Confusion**

Finally, courts consider how much care potential purchasers will exercise when purchasing the parties' products. The more sophisticated consumers are less likely to be misled by similarity in marks. *Homax Prod., Inc.*, 2009 U.S. Dist. LEXIS 126699, at *34. In this case, some purchasers may not be able to differentiate between Plaintiff's and Defendant's products at the time of purchase. But furthermore, customers, users and other members of the relevant public that are not involved at the time of purchase are particularly significant here. These individuals will easily be confused as to the products' source or the endorsement, connection, and affiliation of the parties given the substantial similarity of the marks and products at hand. *Boston Professional Hockey Ass'n*, 510 F.2d at 1012; *Joy Mfg. Co. v. CGM Valve & Gauge Co.*, 730 F.Supp. 1387, 1394 (S.D. Tex. 1989) ("The likelihood of confusion is not limited to confusion at the initial point of sale; it can be at any point in the chain of distribution or ownership, including post-sale confusion of third parties who later encounter the product.") (citing *Lois Sportswear, USA v. Levi Strauss & Co.*, 799 F.2d 867, 872 (2d Cir. 1986)).

Moreover, even if some purchasers are eventually able to distinguish between the parties' products at the point of sale, "[i]nfringement can be based upon confusion that creates initial consumer interest, even though no actual sale is finally completed as a result of the confusion." *Elvis Presley Enters.*, 141 F.3d at 204 (citation and quotations omitted). Initial-interest confusion "gives the junior user credibility during the early stages of a transaction and can possibly bar the senior user from consideration by the consumer once the confusion is dissipated." *Id.* (citation omitted).

In this case, given the substantial similarity of the marks, Sinoboom's use of the Plaintiff's GENIE BLUE trademark causes substantial initial confusion and post-sale confusion. This confusion is very significant here as there are numerous relevant customers and users that may not be involved in a particular purchase decision.  This factor, too, supports a finding of a likelihood of confusion.

## B.    If Not Enjoined, Plaintiff Will be Irreparably Harmed by Sinoboom's Conduct

In trademark infringement actions, the loss of a plaintiff's control over its own reputation and goodwill is deemed an irreparable injury for which preliminary relief is appropriate.  *Quantum Fitness Corp.,* 83 F.Supp.2d at 831; *TGI Friday's, Inc v. Great Northwest Rests., Inc.*, 652 F.Supp.2d 763, 772 (N.D. Tex. 2009). A rebuttable presumption of irreparable harm was recently codified in the Trademark Modernization Act of 2020.  There is good reason for this codification as loss of

control over reputation and goodwill that exists here is nearly impossible to quantify. (Ex. 1, Myers Decl. at ¶ 18.)  As such, monetary damages are simply not adequate to compensate the mark owner for the injury sustained. Here, Plaintiff does not have any control over the quality of Sinoboom's products and is at a significant risk of loss of well-earned reputation if Sinoboom's products have inferior quality, because consumers will assume an affiliation, connection, or endorsement between the Plaintiff and Sinoboom. "To show that it has lost control of its reputation, [Genie] does not have to prove that the Defendants are offering inferior services, only that there is the possibility that the services or goods are not to the satisfaction of [Genie]." *Fletcher's Original State Fair Corny Dogs, LLC v. Fletcher-Warner Holdings LLC*, No. 4:19-CV-681-SDJ, 2020 U.S. Dist. LEXIS 28613, at *40 (E.D. Tex. Jan. 17, 2020) (citing *Paulsson*, 529 F.3d at 313).

Indeed, given the almost inevitable likelihood of confusion between the parties' products, irreparable harm exists (Ex. 1 at ¶ 18) that cannot be rebutted. *Abraham,* 708 F.3d at 627 (5th Cir. 2013) ("[a]ll that must be proven to establish liability and the need for an injunction against infringement is the likelihood of confusion—injury is presumed")(quoting McCarthy on Trademarks and Unfair Competition). This is bolstered by this court's recognition that "[w]here the infringement involves direct competitors, a finding of irreparable harm may well be appropriate" *See Clearline Tech. Ltd*, 948 F.Supp.2d at 715.

**C.    The Balance of Hardship Weighs Heavily in Favor of the Plaintiff**

Having announced its plans to undergo a color change on January 19, 2021, Sinoboom has only just begun infringing Plaintiff's GENIE BLUE trademarks. Given the extremely short period of time since this announcement, it is reasonable to assume that Sinoboom will hardly face any hardship. Plaintiff is asking only that Sinoboom not use Plaintiff's GENIE BLUE trademark. Plaintiff is not asking Sinoboom to stop its operation, manufacture, or sale of its products. Sinoboom has been selling its product since 2008 using a red color scheme and could easily resume using that color to maintain the *status quo*. There is no reason to assume it will face any hardship if it is enjoined from using Plaintiff's GENIE BLUE trademark until the final disposition of this matter by the Court.

Plaintiff, on the other hand, has been using its GENIE BLUE trademarks in connection with the promotion, advertisement, and sale of its products since at least as early as 1986. In doing so, Plaintiff has spent tens of millions of dollars advertising its products to build a stellar reputation and substantial goodwill. (Ex. 1, Myers Decl. at ¶ 9.) Plaintiff should not have to lose its exclusivity of the use of its duly registered GENIE BLUE trademark and risk its reputation. This is especially true, given Sinoboom's brazen copying of the Plaintiff's marks. *Fletcher's Original State Fair Corny Dogs, LLC*, 2020 U.S. Dist. LEXIS 28613, at *42 ("The burden of losing control of its mark, the loss of customers, and the harm to [mark owner's]

reputation and goodwill are greater than the cost to Defendants, who have failed to identify any cost to them not created by their own likely infringing activities."); *see also TGI Friday's Inc.* 652 F.Supp.2d at 773 (noting that "courts usually hold that when defendants improperly use a plaintiff's trademark, the threatened harm to the plaintiff outweighs the threatened harm to the defendants")(citation omitted).

The balance of hardship favors the Plaintiff and entry of the injunction.

## D.   A Preliminary Injunction Will Not Disserve the Public Interest

Not only would a preliminary injunction not disserve the public, but also would serve the public interest. The public has a substantial interest not to be confused and its interest is "always served by requiring compliance with Congressional statutes such as the Lanham Act and by enjoining the use of infringing marks." *Quantum Fitness Corp.*, 83 F.Supp.2d at 832 (citations omitted). The public has a substantial interest in being able to confidently choose the products that it knows and has learned to trust over the years.  In fact, the public interest is the public's right not to be deceived or confused.  *Blue Bell Creameries, L.P. v. Denali Co., LLC*, No. H-08-0981, 2008 U.S. Dist. LEXIS 58083, at *21 (S.D. Tex. July 31, 2008) (citing *S&R Corp. v. Jiffy Lube Intern., Inc.,* 968 F.2d 371, 379 (3d Cir. 1992)). The public interest factor weighs in favor of granting the injunction.

## V.   CONCLUSION

For the foregoing reasons, Plaintiff is respectfully requesting that this Court grant its Application for Preliminary Injunction and enter the preliminary injunction prohibiting Sinoboom from advertising or promoting its aerial products using the color blue.

Respectfully submitted,

Dated:   January 29, 2021          */s/ Clyde Siebman*
Clyde M. Siebman
Texas State Bar No. 18341600
clydesiebman@siebman.com
Kirte Kinser, Of Counsel
Texas State Bar No. 11489650
kirtekinser@siebman.com
**SIEBMAN, FORREST, BURG &**
**SMITH, LLP**
300 N. Travis Street
Sherman, Texas 75090
Tel: (903) 870-0070

Marc Lorelli (P63156MI– *Pro Hac Vice*
Anticipated)
Attorney-in-charge
**BROOKS KUSHMAN P.C.**
1000 Town Center, Twenty-Second Floor
Southfield, Michigan 48075
Tel: (248) 358-4400
Fax: (248) 358-3351
mlorelli@brookskushman.com

*Attorneys for Plaintiffs*