# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS

TEREX SOUTH DAKOTA INC. and
TEREX USA, LLC,

     Plaintiffs,

     v.

SINOBOOM NORTH AMERICA LLC,

     Defendant.

Case No. 4:21-cv-00287

Judge David Hittner

**SINOBOOM'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION
TO DISMISS COUNT I OF SINOBOOM'S AMENDED COUNTERCLAIMS**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ......................................................................................................1

STATEMENT OF FACTS ........................................................................................2

ARGUMENT ...........................................................................................................6

    I.  Legal Standard.............................................................................................6

    II.   Sinoboom Has Plausibly Pled that the '392 Registration is Functional .7

    A.   Use of "the color blue" is a competitive necessity. ...............................7

    B.   Use of "the color blue" is necessary to avoid color depletion..............12

CONCLUSION .......................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................6

*Bd. of Supervisors for Louisiana State Univ. Agric. & Mech. Coll. v.*
    *Smack Apparel Co.*,
    550 F.3d 465 (5th Cir. 2008) ....................................................... 11, 12

*Brunswick Corp. v. British Seagull*,
    35 F.3d 1527 (Fed. Cir. 1994), *cert. denied*, 514 U.S. 1050 (1995) ................. 10

*CTB, Inc. v. Hog Slat, Inc.*,
    954 F.3d 647 (4th Cir. 2020) ...............................................................9

*Deere & Co. v. MTD Holdings, Inc.*,
    No. 00 Civ. 5936 (LMM), 2004 U.S. Dist. LEXIS 2550 (S.D.N.Y.
    Feb. 18, 2004) .............................................................. 13, 14, 15

*Eppendorf-Netheler-Hinz GMBH v. Ritter GMBH*,
    289 F.3d 351 (5th Cir. 2002) ................................................... 8, 9, 12

*Haskett v. T.S. Dudley Land Co.*,
    648 F. App'x 492 (5th Cir. 2016) .........................................................7

*Higgins v. Thaler*,
    No. 4:12-CV-2899, 2013 U.S. Dist. LEXIS 130994 (S.D. Tex. Sep.
    13, 2013) ..................................................................................7

*Johnson v. Johnson*,
    385 F.3d 503 (5th Cir. 2004) ...............................................................6

*Leal v. McHugh*,
    731 F.3d 405 (5th Cir. 2013) ...............................................................6

*M3Girl Designs, LLC v. Blue Brownies, LLC*,
    No. 3-09-CV-2390-F, 2012 U.S. Dist. LEXIS 193606 (N.D. Tex.
    Jan. 3, 2013) ........................................................................... 4, 8

*Pebble Beach Co. v. Tour 18 I Ltd.*,
   155 F.3d 526 (5th Cir. 1998) ...................................................................12, 13, 15

*Poly-Am., LP v. Stego Indus., LLC*,
   No. 3:08-CV-2224-G, 2011 U.S. Dist. LEXIS 82647 (N.D. Tex.
   July 27, 2011)...............................................................................................8, 10

*Qualitex Co. v. Jacobson Prods. Co.*,
   514 U.S. 159 (1995)..........................................................................7, 9, 12, 13

*Racetrac Petroleum v. JJ's Stop*,
   No. 3:01-cv-1397, 2003 U.S. Dist. LEXIS 1569 (N.D. Tex. Feb. 3,
   2003) ....................................................................................................10, 11, 15

*Rodriguez v. Rutter*,
   310 F. App'x 623 (5th Cir. 2009) .......................................................................7

*Teague v. Tex. City Indep. Sch.*,
   No. G-04-558, 2005 U.S. Dist. LEXIS 54261 (S.D. Tex. Feb. 4,
   2005) ....................................................................................................................6

*Traffix Devices, Inc. v. Marketing Displays, Inc.*,
   532 U.S. 23 (2001).....................................................................................7, 8, 9

**Statutes**

15 U.S.C. § 1119 ..........................................................................................................2

**Other Authorities**

Fed. R. Civ. P. 15(a)(1)(B) ........................................................................................2

## **INTRODUCTION**

Plaintiffs Terex South Dakota Inc. and Terex USA, LLC (collectively "Plaintiffs") have moved for dismissal of Defendant Sinoboom North America LLC's ("Sinoboom") Counterclaim Count I. Count I seeks cancellation of Plaintiffs' Trademark Registration No. 3,540,392 (the '392 registration) on the grounds that a registration on "the color blue" without limitation is functional. Plaintiffs' motion should be denied. Sinoboom has plausibly pled that the '392 registration should be cancelled because it is functional.

Because of the liberal pleading standard, and low bar for surviving a motion to dismiss, Rule 12(b)(6) motions are rarely granted. Here, Plaintiffs' singular argument is that Count I asserts a legal claim that is not a viable in the Fifth Circuit. Plaintiffs are incorrect. Sinoboom has alleged sufficient facts to give rise to a reasonable inference that the '392 registration is functional for at least two reasons: (1) permitting Plaintiffs' exclusive use of "the color blue" will put competitors at a significant non-reputation-related disadvantage in the marketplace; and (2) permitting Plaintiffs' to monopolize "the color blue" will lead to "color depletion" or "color scarcity," an outcome the functionality doctrine is intended to prevent. Plaintiffs' motion to dismiss Count I of Sinoboom's counterclaims should be denied.

1

## **STATEMENT OF FACTS**

Plaintiffs sued Sinoboom and sought a preliminary injunction against Sinoboom's use of *any* shade of blue for mobile elevating work platforms ("MEWPs"). (Dkt. 1; Dkt. 8.) Sinoboom filed its Answer and Counterclaims on March 12, 2021. (Dkt. 19.) On April 23, 2021, Sinoboom filed its First Amended Counterclaims as a matter of course under Fed. R. Civ. P. 15(a)(1)(B). (Dkt. 40 ("FAC").) The FAC asserts five counterclaims: cancellation of Reg. No. 3,540,392 based on functionality (Count I); rectification of Reg. No. 3,540,392 pursuant to 15 U.S.C. § 1119 (Count II); cancellation of Reg. Nos. 5,965,074, 5,970,650, and 5,970,651; Rectification of Reg. Nos. 5,965,074, 5,970,650, and 5,970,651 pursuant to 15 U.S.C. § 1119 (Counts IV and V); and declaratory judgment (Count VI). On May 7, 2021, Plaintiffs filed an Answer to Counts II-VI and moved to dismiss Count I. (Dkt. 43; Dkt. 44.) Only Count I is at issue in the present motion.

Count I alleges that Plaintiffs' Reg. No. 3,540,392 is invalid because it is functional. The '392 registration claims "*the color blue* as applied to the base, arm and platform basket of a mobile elevating work platform." (FAC, ¶ 20 (emphasis added).)

**The Color Blue Conveys Value**

Use of "the color blue" without limitation is functional because that color functions to represent the values of intelligence, innovation, reliability, and dependability to consumers. Count I alleges:

> 21. The '392 registration is invalid because it is functional. Use of "the color blue" as claimed in the '392 registration functions to represent at least the values of intelligence, innovation, reliability, and dependability to consumers. Counterclaim-Defendants' purported ownership of "the color blue" without limitation for MEWPs, as claimed in the '392 registration, places other market participants, including Sinoboom, at a significant non-reputation related disadvantage.

> 22. For example, Sinoboom's third party market research conducted when harmonizing its global brand identity shows that the color blue functions to represent the values of innovation, intelligence, reliability, and dependability. (*See* Dkt. 22-1 at 5-6). This market research showed that nearly half of the world's most innovative companies use blue as the dominant color in their logos, which represents these values to consumers. (*See id.* at ¶8)

> 30. Permitting Plaintiffs to monopolize "the color blue" without limitation, as opposed to the specific shade GENIE blue, will foreclose legitimate competition in the marketplace. The color blue is necessary to signify the values of innovation, intelligence, reliability, and trustworthiness which are integral in the MEWP industry.

(*Id.*, ¶¶ 21-22, 30.)

These values are confirmed by numerous independent sources, including market research studies and journal articles. Citing these independent sources, Count I further alleges that the color blue signifies the values of innovation, intelligence, reliability, and dependability:

23. The values signified by the color blue, including innovation, intelligence, reliability, and dependability, are confirmed by numerous independent market studies, research, and articles. . . .

(*Id.*, ¶ 23.)

In addition to these market studies, Plaintiffs' own marketing materials also show that they recognize and intend to capitalize on the functional purpose of the color blue, by conveying the values of innovation, intelligence, reliability, and dependability to consumers. Count I alleges:

25. Counterclaim-Defendants' own marketing materials show they also recognize and intend to capitalize on the functional purpose of the color blue—to convey values that are important to consumers, including innovation, intelligence, reliability, and dependability.

26. Counterclaim-Defendants recognize that blue signifies the values of innovation and intelligence. For example, Counterclaim-Defendants' advertisements refer to blue as "The Color of Ingenuity" and "Smart Blue Lifts." (*See* Dkt. 8-1 at 6; Dkt. 30-1 at 2.) Counterclaim-Defendants' declarant explained:

Terex also promotes its products to highlight the Genie Blue trademark and encourages consumers and the general public to look for Genie Blue as indicating the source of the Genie Products. These advertisements include wording such as "THINK BLUE," "THE COLOR OF CONFIDENCE," and "THE COLOR OF INGENUITY." Other advertisements or brochures have referred to the Genie Products as "smart blue lifts" or "distinctive blue lifts." (Dkt. 8-1, ¶7.)

27. Plaintiffs' advertisements also tout reliability and dependability, which are also values commonly associated with the color blue. (*See* Dkt. 8-2 at 66 ("Distinctive **blue** Genie® lifts set the standard for performance and ***durability*** . . . ."); *id.* at 68 (same); *id.* at 73 ("Genie® products set an industry standard for quality, ***reliability*** and safety.") (emphasis added)). Use of the color blue in some form is necessary for Sinoboom to signify important values to consumers, and Counterclaim-Defendants' attempt to monopolize this

4

entire color places Sinoboom at a significant non-reputation related disadvantage.

(*Id.*, ¶¶ 25-27.)

**Color Depletion Forecloses Competition**

Use of "the color blue" without limitation, as claimed in the '329 registration, is also functional because permitting Plaintiffs to monopolize that color in its entirety will lead to "color depletion" and foreclose legitimate competition in the marketplace. Count I alleges:

28. Furthermore, there are a limited number of colors that can be used when entering the MEWP market. Use of the color blue is necessary to avoid "color depletion" in the MEWP market and permit new entrants to compete in that market.

29. Plaintiffs have acknowledged the limited colors available in the MEWP industry because other established manufacturers have their own colors: "[t]he other major market player, JLG Industries, sells MPEWs having an orange color scheme. Skyjack uses a red and grey combination." (Dtk. 30-1, ¶6.) As Plaintiffs explained, players in the market "use known colors" and customers often "request [ ] particular MEWPs by color." (*Id.*, ¶7.) Accordingly, there is a strong competitive need for colors to be available in the MEWP industry, and there are only a limited number of available colors. . . .

32. Plaintiffs' '392 registration claiming "the color blue" is functional, especially in light of the competitive need for color and limited number of colors available to a party seeking to enter the market. Therefore, the '392 registration, which claims "the color blue" without limitation, as opposed to the specific shade GENIE blue, should be canceled.

(*Id.*, ¶¶ 28-29, 32.)

These factual allegations must be taken as true at the pleading stage.

# ARGUMENT

## I.   Legal Standard

"Dismissal is appropriate only if the [counterclaim] fails to plead 'enough facts to state a claim to relief that is plausible on its face.'" *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A counterclaim is plausible on its face if it "allows the court to draw the reasonable inference that the defendant is liable." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

In a motion to dismiss, the court "accept[s] the [counterclaim's] well-pleaded facts as true and view[s] them in the light most favorable to the plaintiff." *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004); *Leal*, 731 F.3d at 410 (explaining that the court must "construe[] facts in the light most favorable to the nonmoving party"). A "motion to dismiss should not be granted unless the [counterclaim] plaintiff would not be entitled to relief under any set of facts that he could prove consistent with the complaint." *Johnson*, 385 F.3d at 529.

A motion to dismiss is disfavored and "should be granted sparingly and with caution to make certain that the [counterclaimant] is not improperly denied a right to have his claim adjudicated on the merits. *Teague v. Tex. City Indep. Sch.*, No. G-04-558, 2005 U.S. Dist. LEXIS 54261, at *3 (S.D. Tex. Feb. 4, 2005). Because of the liberal pleading standard, and low bar for surviving a motion to dismiss, 12(b)(6)

6

motions are rarely granted. *Higgins v. Thaler*, No. 4:12-CV-2899, 2013 U.S. Dist. LEXIS 130994, at *1 (S.D. Tex. Sep. 13, 2013) ("In reviewing a motion to dismiss under rule 12(b)(6), the complaint must be liberally construed in favor of the plaintiff"); *Haskett v. T.S. Dudley Land Co.*, 648 F. App'x 492, 497 (5th Cir. 2016) (acknowledging the "low bar of Rule 12(b)(6)"); *Rodriguez v. Rutter*, 310 F. App'x 623, 626 (5th Cir. 2009) ("Motions to dismiss under Rule 12(b)(6) are rarely granted and generally disfavored.").

## II. Sinoboom Has Plausibly Pled that the '392 Registration is Functional

### A.  Use of "the color blue" is a competitive necessity.

Functional features cannot be trademarks. *See Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 164-65 (1995) ("The functionality doctrine prevents trademark law, which seeks to promote competition by protecting a firm's reputation, from instead inhibiting legitimate competition by allowing a producer to control a useful product feature."); *see also Traffix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 29-30 (2001). The Supreme Court has stated two tests for functionality. The so-called "traditional" test states that "a product feature is functional, and cannot serve as a trademark, if it is essential to the use or purpose of the article or it affects the cost or quality of an article." *Traffix*, 532 U.S. at 32 (internal quotation marks omitted). The second "competitive necessity" test holds that "a functional feature is one the exclusive use of which would put competitors at

a significant non-reputation-related disadvantage." *Id.* Under the "competitive necessity" test, "the ultimate inquiry concerning functionality is whether characterizing a feature or configuration as protected will hinder competition or impinge upon the rights of others to compete effectively in the sale of goods." *Eppendorf-Netheler-Hinz GMBH v. Ritter GMBH*, 289 F.3d 351, 356 (5th Cir. 2002).

Plaintiffs' motion is based on the mistaken belief that the Fifth Circuit has rejected the competitive necessity test. (*See* Dkt. 43-1 at 9-11.) Plaintiffs' belief is incorrect as a matter of law. The competitive necessity test remains a viable basis for functionality in the Fifth Circuit. *See M3Girl Designs, LLC v. Blue Brownies, LLC*, No. 3-09-CV-2390-F, 2012 U.S. Dist. LEXIS 193606, *8 (N.D. Tex. Jan. 3, 2013) ("If the asserted trade dress is not functional under the traditional test, then courts in the Fifth Circuit consider whether it is functional under the 'competitive necessity' test.") (citing *Bd. of Supervisors for Louisiana State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 486 (5th Cir. 2008) and *Eppendorf*, 289 F.3d at 355); *Poly-Am., LP v. Stego Indus., LLC*, No. 3:08-CV-2224-G, 2011 U.S. Dist. LEXIS 82647, *36-42 (N.D. Tex. July 27, 2011) (finding color mark functional under competitive necessity test). Indeed, the Fifth Circuit recognized nearly twenty years ago that the "competitive necessity" test is virtually identical to the Circuit's longstanding "utilitarian" test, which it held was superseded as the primary test of

functionality by the "traditional test" but remained valid as a secondary test. *See Eppendorf*, 289 F.3d at 356.

Count I alleges sufficient facts to give rise to a reasonable inference that allowing a single company to monopolize "the color blue" without limitation will have just such an effect and will put competitors "at a significant non-reputation-related disadvantage." *Traffix*, 532 U.S. at 32. As Count I alleges, use of "the color blue" is a competitive necessity in order to signify the values of intelligence, innovation, reliability, and dependability to consumers. (FAC, ¶¶ 21-32). The association of "the color blue" with these values is confirmed by numerous sources, including Sinoboom's market research (*id.*, ¶ 22), independent market studies and articles (*id.*, ¶ 23), and Plaintiffs' own marketing materials (*id.*, ¶¶ 25-27). Sinoboom has alleged facts sufficient to give rise to a plausible inference that use of "the color blue" affects the manufacturing and marketing the product and perceived quality of the product.[1] (*Id.*, ¶¶ 22-27, 41.) Taken as true, these facts are more than enough to

---

[1] Sinoboom's factual allegations, which assert the ways in which the color blue plays an important role (unrelated to source identification) in making the product more desirable, also give rise to a reasonable inference of functionality under the "traditional test" as that test is described and discussed by the Supreme Court. *See Qualitex*, 514 U.S. at 165 (equating instances where "color plays an important role (unrelated to source identification) in making a product more desirable" with color being "essential to a product's use or purpose" or "affect[ing] cost or quality"); *CTB, Inc. v. Hog Slat, Inc.*, 954 F.3d 647, 669 (4th Cir. 2020) (holding red and shiny gray used in a poultry feeding mechanism were functional under the traditional test because evidence showed birds were attracted to those colors).

state a plausible claim of functionality under the "competitive necessity" test. *See, e.g.*, *Brunswick Corp. v. British Seagull*, 35 F.3d 1527, 1532 (Fed. Cir. 1994), *cert. denied*, 514 U.S. 1050 (1995) (holding use of black on outboard motors is functional under the competitive need test because it makes the motor appear smaller and is compatible with many different boat colors); *Poly-Am.*, 2011 U.S. Dist. LEXIS 82647, *37-38 (holding use of the color yellow for vapor barriers was functional under the competitive need test: "Granting [the trademark owner] exclusive use of these non-trademark functions would entrench [the trademark owner's] competitive advantage by preventing potential competitors from effectively competing for the business of those customers who prefer yellow vapor barrier because it offers the described benefits."); *Racetrac Petroleum v. JJ's Stop*, No. 3:01-cv-1397, 2003 U.S. Dist. LEXIS 1569, at *44-46 (N.D. Tex. Feb. 3, 2003) (holding that white block letters on a red background for gas station sign was functional because this format both "attracts the eye of the customer and conveys the image of energy, heat and fire.").

*Racetrac Petroleum* is instructive. There the claimed trade dress, which was found to be functional, included the use of a "large yellow price sign with black numbers" and "white block letters on a red background" by discount gasoline retailers to draw customers to their stores. *Racetrac Petroleum*, 2003 U.S. Dist. LEXIS 1569, at 44. With respect to the large yellow price sign, the evidence in the

10

record was that there were only a few color combinations that worked to effectively display this information and that "work[ed] well to draw the customer's eye." *Id.* And, as to the use of white block letters on a red background for the store name itself, the Court took note of the fact that this format both "attracts the eye of the customer and conveys the image of energy, heat and fire." *Id.* at 45-46.

*Racetrac Petroleum* is analogous to Sinoboom's factual allegations in the case at hand. Not only are there only a limited number of standard colors available in the market, i.e. red, orange, gray, blue, etc., there is only one color that has been shown by extensive market research to convey the values of intelligence, innovation, reliability, and dependability to consumers. The *Racetrac* Court determined the trade dress in that case was functional because it permitted monopolization of one of only a limited number of color options and thus would be anti-competitive. Likewise, here, Sinoboom as adequately alleged that permitting Plaintiffs to monopolize "the color blue" without limitation would unduly hinder free competition.

Plaintiffs' reliance on *Smack Apparel* is misplaced. (*See* Dkt. 43-1 at 10.) That case is distinguishable on its facts. While functionality seeks to preserve "legitimate (non-trademark-related) competition," the defendant in that case admitted that the colors and other indicia they sought to have declared functional were specifically designed to call the plaintiff's trademarks to mind. *Smack Apparel*, 550 F.3d at 487-48. Under those circumstances, the Court found the alleged competitive

disadvantage related "solely to an inability to take advantage of the [Plaintiff's] reputation and the public's desired association with the [Plaintiff]." *Id.* at 488. That is not the case here.

Sinoboom has alleged extensive facts showing the legitimate (non-trademark-related) competitive uses of "the color blue" without limitation that would be improperly prohibited by the registration Sinoboom seeks to cancel as functional. These uses are entirely unrelated to Plaintiffs' use of a single, specific shade of GENIE blue on its MEWPs. As pled in Count I, the use of blue is a competitive necessity. The '392 registration, which is not limited to GENIE blue but rather claims "the color blue" without limitation, is invalid as functional.

**B.    Use of "the color blue" is necessary to avoid color depletion.**

In addition to the "traditional" and "competitive necessity" tests, it is widely accepted that functionality, which is at its core a doctrine intended to prevent anticompetitive use of trademarks,[2] will prevent the registration of a color mark where a "color depletion" or "color scarcity" problem exists. As the Supreme Court explained, "if a 'color depletion' or 'color scarcity' problem does arise—the trademark doctrine of 'functionality' normally would seem available to prevent the

---

[2] *See, e.g.*, *Qualitex*, 514 U.S. at 164-65; *Eppendorf*, 289 F.3d at 356; *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 536 (5th Cir. 1998) (holding functionality is implicated where "free competition would be unduly hindered by according the design trademark protection").

anticompetitive consequences." *Qualitex Co.*, 514 U.S. at 168-69; *see also Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 536 (5th Cir. 1998) (holding a design is functional if it is "one of a limited number of equally efficient options available to competitors and free competition would be unduly hindered by according the design trademark protection") (quoting *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 775 (1992)); *Deere & Co. v. MTD Holdings, Inc.*, No. 00 Civ. 5936 (LMM), 2004 U.S. Dist. LEXIS 2550, at 25 (S.D.N.Y. Feb. 18, 2004) ("[I]f this Court were to grant Deere exclusive trademark protection over the general use of basic colors (green and yellow), such protection would significantly hinder competition by limiting the range of adequate alternative designs available to other manufacturers . . . under the doctrine of functionality, the Court cannot grant Deere such broad protection."). This rule makes sense. New entrants to the market must be able to use *some* color for their products without running afoul of the trademark laws. Plaintiffs' attempted monopolization of "the color blue" without limitation, as opposed to the single shade of GENIE blue, is anticompetitive.

Sinoboom has also specifically and sufficiently alleged functionality under such a "color depletion" theory. Sinoboom has alleged that "there are a limited number of colors that can be used when entering the MEWP market" and that "[u]se of the color blue is necessary to avoid 'color depletion' in the MEWP market and permit new entrants to compete in that market." (FAC, ¶ 28.) Furthermore, as

13

explained in Count I, Plaintiffs have acknowledged the limited colors available in the MEWP market because other established manufacturers, such as JLG and Skyjack, also have their own colors. (*Id.*, ¶ 29.) As Count I explains, there is a strong competitive need for colors to be available in the MEWP industry, and there are only a limited number of available colors. (*See id.*) These facts, which must be taken as true at the motion to dismiss stage, are sufficient to state a claim of functionality under a "color depletion" theory because use of *some* shade of blue is a competitive necessity.

*Deere & Co. v. MTD Holdings, Inc.* is instructive. *See Deere & Co.*, 2004 U.S. Dist. LEXIS 2550. There, as here, the plaintiff sought exclusive ownership of entire colors, rather than limited protection of a shade or color combination specific to its products and trademarks. *Id.* at *23-24. The Court held that such broad protection "does not comport with the underlying policies of the Lanham Act, and would place other manufacturers at a 'significant non-reputational disadvantage,'" before concluding that "green and yellow in the abstract are functional and not entitled to protection." *Id.* at *24, 26. Sinoboom's counterclaim alleges exactly this, that "the color blue" without limitation is functional.

Prohibiting new entrants to the market, such as Sinoboom, from using "the color blue" without limitation, as opposed to the specific shade GENIE blue, will lead to "color depletion" and foreclose competition in the marketplace. Indeed, by

claiming "the color blue" without limitation, Plaintiffs purport to prohibit the use of fully one seventh of the color spectrum available to new entrants to the market. The use of blue in some form is one of only a limited number of equally efficient options available to competitors. Free competition would be unduly hindered by permitting Plaintiffs to monopolize "the color blue" without any limitation. (*See* FAC, ¶¶ 29-32.) *See also, e.g.*, *Pebble Beach Co.*, 155 F.3d at 536; *Deere & Co.*, 2004 U.S. Dist. LEXIS 2550, at *25; *Racetrac Petroleum*, 2003 U.S. Dist. LEXIS at *46.

As such, Sinoboom has alleged two legally sufficient bases for cancellation as well as sufficient facts that give rise to a reasonable inference that a registration on "the color blue" as claimed in the '392 registration is functional and Plaintiffs' motion should be denied.

## CONCLUSION

For the reasons stated above, Sinoboom respectfully requests that Plaintiffs' motion to dismiss be denied and it be permitted to proceed with its counterclaim Count I for cancellation of the '392 registration.

Respectfully submitted,


Dated: June 4, 2021 *s/ Thomas R. Johnson*
David E. Wynne
Texas State Bar No. 24047150
Federal Bar No. 566468
Shana L. Merman
Texas State Bar No. 24045586
Federal Bar No. 980839
BURDINE WYNNE LLP
1415 Louisiana St., Suite 3900
Wedge International Tower
Houston, TX 77002
Phone: 713-227-8835
Fax: 713-227-6205
Email: dwynne@burdinewynne.com
Email: smerman@burdinewynne.com

Thomas R. Johnson
Attorney-In-Charge (Admitted Pro Hac Vice)
Minnesota State Bar No. 242032
Michael A. Erbele (Admitted Pro Hac Vice)
Minnesota State Bar No. 0393635
MERCHANT & GOULD P.C.
150 South Fifth St., Suite 2200
Minneapolis, MN 55402
Phone: 612-332-5300
Fax: 612-332-9081
Email: tjohnson@merchantgould.com
Email: merbele@merchantgould.com


*Attorneys for Defendant*
*Sinoboom North America LLC*

16

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of *Sinoboom's Response in Opposition to Plaintiffs' Motion to Dismiss Count I of Sinoboom's Amended Counterclaims* has been served on all counsel listed below either electronically pursuant to the court's ECF noticing system, direct e-mail or facsimile on this the 4th day of June 2021.

> Cylde M. Siebman
> Kirte M. Kinser
> SIEBMAN, FORREST, BURG & SMITH, LLP
> 300 N. Travis StreetSherman, TX 75090
> clydesiebman@siebman.com
> kirtekinser@siebman.com
>
> Marc Lorelli
> Rebecca Cantor
> BROOKS KUSHMAN P.C.
> 1000 Town Center, 22nd Floor
> Southfield, MI 48075
> mlorelli@brookskushman.com
> rcantor@brookskushman.com
>
> David E. Wynne
> Burdine Wynne LLP
> 1415 Louisiana, Suite 3900
> Houston, TX  77202
> dwynne@burdinewynne.com

/s/ Thomas R. Johnson
Thomas R. Johnson

17